**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FRANCISCO DeLEON,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 06-175 Erie** |
| | ) DISTRICT JUDGE COHILL |
| **JAMES T. WYNDER, et al.,** | )  CHIEF MAGISTRATE JUDGE BAXTER |
| | ) |
| **Respondents.** | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.    RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

## II.    REPORT

Petitioner, Francisco DeLeon, is a state prisoner incarcerated at the State Correctional Institution at Dallas, Pennsylvania.  Currently pending before this court is his Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254.  (Docket # 5).  He raises the following four claims:

    (1)    The trial court erred in refusing to grant his request for a change of venue or venire;

    (2)    The prosecution produced legally insufficient evidence to support his convictions of first-degree murder and conspiracy to commit murder;

    (3)    The trial court erred in denying his motion to sever his trial from that of the other individual defendants; and,

    (4)    His trial counsel provided him with ineffective assistance of counsel when counsel "urged" him not to testify at trial.

### A.    Relevant Procedural History

On April 8, 1999, two of Petitioner's brothers-in-law, Willie Williamson (age 18) and Neil Simpson (age 16), together with another juvenile, Rafael Rosa, participated in an assault and robbery of Ronald Guzowski.  Martin Ondreako was also with the group, and he subsequently

provided information to the Erie Police Department implicating the others.  Petitioner and the participants in the assault upon Ronald Guzowski then conspired to silence Ondreako.  Petitioner, Simpson, Williamson, and another juvenile, Daniel Nitu, lured Ondreako to an isolated location, stabbed him to death, and dumped his body into Lake Erie.  (See Tab[1] 18 at pp. 1-2).

Due to a conflict of interest within the Office of the District Attorney, the Attorney General of Pennsylvania assumed responsibility for the prosecution of the case.  The prosecution arising from the assault and robbery of Guzowski and the prosecution arising from the murder of Ondreako were consolidated.  Nitu and Rosa cooperated with investigators and received juvenile court dispositions in return for their cooperation.  Williamson and Simpson were charged with both sets of crimes.  Petitioner was charged only with crimes related to the murder of Ondreako.  Joseph M. Walsh, III, Esq., represented him.

The Commonwealth sought the death penalty against all three defendants.  On September 30, 1999, Petitioner filed an omnibus pre-trial motion in which he requested a change of venue or venire, arguing that an impartial jury could not be selected in Erie County due to the extensive pre-trial publicity generated in the case.  (Tab 4; see also Tabs 7 & 8).  In that same motion, Petitioner also moved for his case to be severed from that of the other two defendants, arguing he "had absolutely nothing to do with the assault that took place on Ronald Guzowski and is not a Defendant in that case" and he would be unduly prejudiced by consolidation of the two cases.  (Tab 4 at p. 2).

On October 28, 1999, the Honorable John A. Bozza of the Court of Common Pleas of Erie County presided over argument on the pretrial motion.  (Tab 5).  Judge Bozza denied the motion for severance and deferred the motion for change of venue until the time of jury selection.  (Tab 6).

Jury selection was conducted on March 1-3, 2000, and Judge Bozza did not grant a change of venue or venire.  (Tabs 9-11).  Trial testimony began on March 6, 2000.  (Tabs 12-15).  On March 9, 2000, the jury found Petitioner, Williamson, and Simpson each guilty of first-degree

---

[1]  Respondents have submitted the state court record in hard-copy format in a five volume appendix, with documents indexed at Tab 1 through Tab 32.

murder, criminal conspiracy to commit first-degree murder, and retaliation against a witness arising from the death of Martin Ondreako. The jury also found Williamson and Simpson guilty of robbery, aggravated assault, and criminal conspiracy with respect to Ronald Guzowski. The penalty phase commenced on that same day, and the jury returned verdicts of life imprisonment for each of the three defendants on the first-degree murder conviction. Judge Bozza also subsequently sentenced Petitioner to terms of imprisonment on his convictions of criminal conspiracy to commit murder and of retaliation against a witness. (See Tab 27 at p. 1).

Judge Bozza denied post-trial motions. (Tabs 16-18). Petitioner (represented at that point by Deanna L. Heasley, Esq.) appealed to the Superior Court of Pennsylvania and contended that the trial court erred in denying his pre-trial motions regarding change of venue/venire and his request for a severance. (Tab 20). Additionally, Petitioner claimed that the evidence adduced at trial was insufficient to support guilty verdicts for first-degree murder and conspiracy to commit first-degree murder. (Id.)

Petitioner's appeal was consolidated with those of his two codefendants. In a memorandum opinion filed on September 28, 2001, the Superior Court denied Petitioner's claims on the merits and affirmed the judgments of sentence for all three defendants. (Tab 21). Petitioner filed a petition for allowance of appeal (Tab 22), which was denied by the Supreme Court of Pennsylvania on March 19, 2002 (Tab 23).

On August 21, 2002, Petitioner filed a *pro se* motion for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. (Tab 24). Ultimately, on September 8, 2004 and after the resolution of issues not pertinent to this proceeding, the court appointed Edward J. Hatheway, Esq., to represent Petitioner, and an amended PCRA petition was filed. (Tab 25). In the amended PCRA motion, it was contended that trial counsel, Attorney Walsh, provided Petitioner with constitutionally ineffective assistance for advising Petitioner not to testify at trial.

Judge Bozza presided over an evidentiary hearing on March 10, 2005 (Tab 26), during which both Petitioner and Attorney Walsh testified. Judge Bozza denied relief in an order and opinion issued in March 2005. (Tab 27). On December 9, 2005, the Superior Court rejected

Petitioner's claim on the merits and affirmed the denial of PCRA relief.  (Tab 30).  The Supreme

Court of Pennsylvania denied a petition for allowance of appeal on April 28, 2006 (Tab 32), and

Petitioner filed the instant petition for writ of habeas corpus with this court in August 2006.

**B.   Legal Analysis**

**1.**

To obtain habeas relief, Petitioner must show that his federal constitutional rights were

violated.  28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Each of Petitioner's

claims implicate his federal constitutional rights, and (as Respondents acknowledge as to each

claim) Petitioner presented, or "exhausted," each claim to the state courts either on direct appeal or

during the PCRA proceedings, as he is required to do under the federal habeas statute.  28 U.S.C. §

2254(b)(1)(A).  The exhaustion requirement is grounded on principles of comity in order to ensure

that state courts have the initial opportunity to review federal constitutional challenges to state

convictions.  See e.g., Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

Because the state court adjudicated and denied each of Petitioner's claims on the merits, this

court must review each claim under the standard of review set forth in the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), which is codified at 28 U.S.C. § 2254(d).

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to

prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the

extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

Under AEDPA, federal habeas relief may only be granted when the state court's decision on

the merits of a claim "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States[.]" 28 U.S.C. § 2254(d)(1); see also Williams v. Taylor, 529 U.S. 362, 405-06 (2000);

Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).  "A state-court decision is 'contrary to'

clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the

Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a

decision of [the Supreme] Court and nevertheless arrives at a [different] result.'"  Lambert, 387

F.3d at 234 (quoting <u>Williams</u>, 529 U.S. at 405-06).  "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 407).

State court factual determinations are also given considerable deference under AEDPA (and indeed were accorded much deference even before the enactment of AEDPA).  <u>Id.</u> at 239. Petitioner must establish that the state court's adjudication of his claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(2).[2]

**2.**

In his first claim, Petitioner contends that he was denied his right to an impartial jury when Judge Bozza denied his request for a change of venue or venire due to what he characterizes as highly prejudicial pre-trial publicity.  Petitioner raised this same claim on direct appeal to the Superior Court.  In that appeal, Petitioner argued that a five-page article that appeared in the Erie Sunday Times in July 1999 (a copy of which is appended to his appellate brief at Tab 20) was inherently prejudicial because it was sensational, inflammatory, and slanted towards conviction. (Tab 20 at pp. 15-16).  He described the article as containing "lengthy and specific renditions of" Daniel Nitu's and Rafael Rosa's (the two coconspirator informants') stories; statements from Ondreako's mother "crying out for justice"; pictures of the investigating officer, Detective Sergeant James Skindell, standing near one of the alleged crime scenes; candid photographs of Ondreako, and a "timeline" of events.  (<u>Id.</u> at pp. 15-17).  He further argued that the assertions of prejudice are

---

[2]  Within this overarching standard, a petitioner may attack specific factual determinations that are subsidiary to the ultimate decision.  <u>See</u> 28 U.S.C. § 2254(e)(1); <u>Lambert</u>, 387 F.3d at 235-36.  Section 2254(e)(1) instructs that "a determination of a factual issue made by a State court shall be presumed to be correct.  The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  <u>Id.</u>

borne out by the fact that over 90% of the jury pool admitted to having previously heard about the case. (Id.)  Respondents counter that Petitioner has failed to establish any inflammatory reporting or other prejudicial publicity.

The Supreme Court of the United States has held that the due process clause of the Fourteenth Amendment guarantees a criminal defendant the right to "a trial by an impartial jury free from outside influences."  Sheppard v. Maxwell, 384 U.S. 333, 362 (1966); see also Irvin v. Dowd, 366 U.S. 717, 722 (1961); Rideau v. Louisiana, 373 U.S. 723 (1963); Estes v. Texas, 381 U.S. 532 (1965); Murphy v. Florida, 421 U.S. 794 (1975); Patton v. Yount, 467 U.S. 1025 (1984).  When prejudicial pretrial publicity or an inflamed community atmosphere preclude seating an impartial jury, due process requires the trial court to grant a defendant's motion for change of venue, Rideau, 373 U.S. at 726, or a continuance, Sheppard, 384 U.S. at 362-63.  Ultimately, the question is whether a defendant's "trial was not fundamentally fair."  Two standards guide analysis of this question.  They are the "presumed prejudice" standard and the "actual prejudice" standard.

"Where media or other community reaction to a crime or a defendant engenders an atmosphere so hostile and pervasive as to preclude a rational trial process, a court reviewing for constitutional error will presume prejudice to the defendant without reference to an examination of the attitudes of those who served as the defendant's jurors."  Rock v. Zimmerman, 959 F.2d 1237, 1252 (3d Cir. 1992), overruled on other grounds Brecht v. Abrahamson, 507 U.S. 619 (1993); see also Sheppard, 384 U.S. at 333; Rideau, 373 U.S. at 723.  Such cases, however, are "exceedingly rare."  Rock, 959 F.2d at 1253; Flamer v. Delaware, 68 F.3d 736, 754 (3d Cir. 1995).  In fact, for a court to presume prejudice, "the community and media reaction…must have been so hostile and so pervasive as to make it apparent that even the most careful voir dire process would be unable to assure an impartial jury."  Id. at 1252.

In refusing to presume prejudice in Petitioner's case, the Superior Court relied on the more than eight month "cooling-off period" between the time when the July 1999 article was published and the selection of the jury.  (Tab 21 at pp. 5-6).  The United States Supreme Court has explained that, even when pretrial publicity is extensive and severe, a lapse in time between the publicity and the trial can dissipate any prejudice that may have resulted.  In Murphy, for instance, the Court held

6

that extensive media coverage of the defendant's prior crimes did not amount to prejudice, particularly since the publicity had stopped seven months before jury selection.  Murphy, 421 U.S. at 802.  In Patton, the Court found no prejudice when, although there was extensive and prejudicial media coverage, "the community sentiment had softened" between the time of the coverage and the trial.  467 U.S. at 1034.  "That time soothes and erases is a perfectly natural phenomenon, familiar to all," the Patton Court explained.  Id.

> The relevant question is not whether the community remembered the case, but whether the jurors at [the defendant's] trial had such fixed opinions that they could not judge impartially the guilt of the defendant.  It is not unusual that one's recollection of the fact that a notorious crime was committed lingers long after the feelings of revulsion that create prejudice have long passed…. *[I]t is clear that the passage of time…can be a highly relevant fact.  In the circumstances of this case, we hold that it clearly rebuts any presumption of partiality or prejudice that existed at the time of the initial trial*.

Id. at 1035 (emphasis added) (internal citations omitted); see also Flamer, 68 F.3d at 755 (refusing to presume prejudice when there was a lapse of eight months between the publication of the last newspaper story on which the defendant relied and the start of jury selection); Pruett v. Norris, 153 F.3d 579, 586 (8th Cir. 1998) (recognizing benefits of cooling-off period of eleven months).

The publicity upon which Petitioner relied in his case is far from the kind that would have created a "trial atmosphere…utterly corrupted by press coverage," Murphy, 421 U.S. at 799, that the United States Supreme Court has required before attaching a presumption of prejudice.  As such, Petitioner has failed to show that his is one of those "exceedingly rare" cases, Rock, 959 F.2d at 1252, where "the community and media reaction…[was] so hostile and so pervasive as to make it apparent that even the most careful voir dire process would be unable to assure an impartial jury."  Id.  The *voir dire* in this case also provides ample support for the Superior Court's conclusion that the "cooling off period" had an effect in his case.  Of the 161 prospective jurors questioned in this case, 36, or a little over 22%, had to be excused for cause because they admitted that exposure to pretrial publicity would prevent them from being fair and impartial.  (Tab 21 at p. 6).  Petitioner has not directed this court to any evidence that such a figure evinces "a community with sentiment so poisoned against petitioner as to impeach the indifference of jurors who displaced no animus of their own."  Murphy, 421 U.S. at 803.

The second standard utilized by the Supreme Court in pretrial publicity cases is "actual prejudice."  To find the existence of actual prejudice, Petitioner must satisfy two basic prerequisites.  First, he must shown that one or more jurors who decided the case entertained an opinion, before hearing the evidence adduced at trial, that the defendant was guilty.  Irvin, 366 U.S. at 727.  Second, he must show that these jurors could not have laid aside these preformed opinions and "render[ed] a verdict based on the evidence presented in court."  Id. at 723.  As the Supreme Court has explained:

> It is not required…that jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case.  This is particularly true in criminal cases.  To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. *It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.*

Id. at 722-23 (emphasis added).

In determining whether actual prejudice existed, the Superior Court in this case appropriately looked to the totality of the circumstances, including the *voir dire* of those potential jurors ultimately empaneled.  Murphy, 421 U.S. at 799-801.  The court examined the 463 pages of the relevant transcript and determined that: "During the extensive *voir dire* process, each venire person was questioned regarding when and what, if anything, he or she had seen, heard or read about the case.  All of the jurors selected affirmatively stated that they could remain impartial despite any previous knowledge of the case from whatever source at whatever time."  (Tab 21 at p. 6).

Additionally, and most importantly, Judge Bozza, who presided over the extensive *voir dire*, determined that the jurors who sat could set aside any information they had heard and read and serve fair and impartially.  His factual determinations on this point are accorded substantial deference by the federal habeas corpus court.  As the Supreme Court recently reiterated: "Deference to the trial court is appropriate because it is in a position to assess the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the

8

attitude and qualifications of potential jurors."  Uttecht v. Brown, — S.Ct. — , 2007 WL 1582998,

*6 (June 4, 2007).

      In conclusion, the state court's decision, which evaluated Petitioner's claim under the

appropriate legal principles, was not "contrary to" "clearly established Federal law[.]"  28 U.S.C. §

2254(d)(1).  And, its decision was not an "unreasonable application of" that law, nor did it result

"in a decision that was contrary to, or involved an unreasonable determination of the facts in light

of the evidence presented in the state court proceeding."  Id. § 2254(d)(1), (2).  As a result,

Petitioner is not entitled to habeas relief on this claim.


### 3.

      To assess Petitioner's next claim – that the evidence adduced at his trial was constitutionally

insufficient to sustain his convictions of first-degree murder and conspiracy to commit murder –

the court must consider whether, *viewing the evidence in the light most favorable to the*

*prosecution*, any rational finder of fact could have found the essential elements of the crime beyond

a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Orban v. Vaughn, 123 F.3d

727, 731-33 (3d Cir. 1997).

      In applying the above-recited legal analysis and rejecting this claim on the merits, the

Superior Court first set out the essential elements of the crimes at issue.  The elements which must

be proven beyond a reasonable doubt to sustain a conviction of first-degree murder are: (1) a

human being was unlawfully killed; (2) the person accused did the killing; (3) the killing was done

with malice aforethought; and (4) the killing was deliberate and premeditated.  (Tab 21 at p. 13

(citing 18 Pa.C.S. § 2502(a), (d)).  "A person is guilty of criminal conspiracy with another person

or persons if with the intent to commit a crime he 'agrees with such other person or persons that

they or one or more of them will engage in conduct which constitutes such crime or an attempt or

solicitation to commit such crime.'"  (Id. at p. 14 (quoting 18 Pa.C.S. § 903(a)(1)).  The Superior

Court then concluded as follows:

> We have reviewed the entire record in the light most favorable to the
> Commonwealth and find that the evidence presented at trial was sufficient to allow
> the jury to conclude that all the elements of first-degree murder and conspiracy to

[commit] first-degree murder had been proven beyond a reasonable doubt against each [defendant]. *In particular, the trial testimony of Rafael Rosa and Daniel Nitu, if believed, was sufficient to prove the charges.*

Rosa was among the participants in the beating of Guzowski and was present when the plans to kill Ondreako were discussed. Rosa testified that he saw and heard Williamson, Simpson and [Petitioner] plan the Ondreako killing. Although he was not present at the killing, he testified that Williamson later admitted to him that he had stabbed Ondreako.

Nitu participated in the stabbing of Ondreako and during his trial testimony, Nitu identified all three [defendants] as participants in the murder. He testified that after [Petitioner] tackled Ondreako to the ground, Williamson and Simpson assisted in pinning Ondreako face-down. [Defendants] then passed a single knife among them and took turns stabbing Ondreako in the back until he was dead. We reject [defendants'] claim that the evidence was insufficient to convict.

(Id. at p. 14 (emphasis added)).

The Superior Court aptly set forth why a rational finder of fact could have found the elements of first-degree murder and conspiracy to commit murder beyond a reasonable doubt. Petitioner does not identify any element of either offense that was not proven at trial by the Commonwealth. Essentially, he takes issue with the fact that the jury credited the testimony Rosa and Nitu. It was within the jury's province, however, to credit the evidence as it saw fit. And, in reviewing this claim, this court must consider (as the Superior Court did) the evidence in the light most favorable to the prosecution. Jackson, 443 U.S. at 319. With that in mind, the Superior Court's decision that there was sufficient evidence to support a conviction of first-degree murder and conspiracy to commit first-degree murder was not "contrary to" or an "unreasonable application of" "clearly established Federal law," and did not result "in a decision that was contrary to, or involved an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," 28 U.S.C. § 2254(d)(1), (2). Therefore, Petitioner is not entitled to habeas relief on this claim.

**4.**

In his next claim, Petitioner contends that his constitutional rights were violated because Judge Bozza denied his motion to sever the trial for the murder and for conspiracy to murder Ondreako from that of his codefendants' trial for the Guzowski robbery and assault. The United

States Supreme Court has explained that "[i]mproper joinder does not, by itself, violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." United States v. Lane, 474 U.S. 438, 446 n. 8 (1986).  "[A] criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by the joint trial."  Cummings v. Evans, 161 F.3d 610, 619 (10th Cir. 1998).  See also Jenner v. Class, 79 F.3d 736, 741 (8th Cir. 1996) (holding that habeas relief based on the trial court's failure to grant severance is only appropriate where petitioner "can establish that the failure to grant severance rendered his trial fundamentally unfair"); Lewis v. Huch, 964 F.2d 670, 676 (7th Cir. 1992) (failure to sever will only warrant habeas relief where the trial court's refusal to grant severance was an abuse of the trial court's discretion and that this abuse resulted in a trial that was fundamentally unfair).

Fundamental unfairness can be shown where the defenses presented by two defendants are truly "mutually exclusive, such that the jury could not believe the core of one defense without discounting entirely the core of the other."  United States v. Dirden, 38 F.3d 1131, 1141 (10th Cir. 1994).  Codefendants' attempts to cast blame on one another are, as a general rule, insufficient.  Id.; Hood v. Helling, 141 F.3d 892, 897 (8th Cir. 1998) ("Accusations between codefendants at a joint trial and the admission of evidence by one party that is harmful to the other do not necessarily make a trial fundamentally unfair.")

The Superior Court considered this claim on the merits on direct appeal and rejected it. (Tab 21 at pp. 8-12).  It first explained that in this case joinder was entirely appropriate under the Pennsylvania Rules of Criminal Procedure, which provide that defendants charged separately may be tried together if they are alleged to have participated in the same act or transaction or series of acts or transactions constituting an offense.  (Id. at p. 8 (citing Pa.R.Crim.P. 582)).  The court further noted that: "not only are joint trials permissible, but they are favored and are subject to a manifest abuse of discretion standard when a severance order is reviewed on appeal.  Where, as here, there is a charge of conspiracy there is a preference for joinder."  (Id. (citations omitted)).

The Superior Court next held that Petitioner had failed to show that he was prejudiced by

11

the joinder.  (Id. at pp. 9-12).  In explaining why Petitioner failed to demonstrate prejudice, the Superior Court noted that the evidence of the beating of Guzowski was admissible as evidence in the trial of the murder of Ondreako because it provided evidence of the motive for the murder. (Id.)  It further noted that even though Petitioner did not participate in the robbery of and assault upon Guzowski, he initiated the conspiracy to murder the witness, Ondreako, in an effort to help his younger relatives avoid prosecution for the robbery and assault.  (Id.)  The Superior Court also explained that here were no antagonistic defenses and there was no confusion engendered in the minds of the jurors arising from the consolidation of the offenses.  (Id.)

To further buttress the Superior Court's holding that Petitioner was not prejudiced by the joinder, Respondents point out that Judge Bozza repeatedly instructed the jury, in clear and unmistakable language, that they were to decide each case individually and the guilt or innocence of each defendant individually.  Those instructions were provided during jury selection (Tab 9 at p. 4); at the start of the trial (Tab 12 at pp. 17-18); during instructions given after the presentation of evidence (Tab 14 at p. 4); and twice during the final instructions to the jury (id. at pp. 66, 79).

Respondents contend that Petitioner has failed to demonstrate that the state court erred in denying his motion to sever, let alone demonstrate that his trial was fundamentally unfair and that there was an error of constitutional magnitude.  The court agrees.  Petitioner has not demonstrated that he is entitled to relief under a de novo review, let alone under AEDPA's standard of review, 28 U.S.C. § 2254(d)(1), (2), and he is not entitled to habeas relief on this claim.

**5.**

In his final claim for relief, Petitioner contends that Attorney Walsh provided him with ineffective assistance of counsel for "urging" him not to testify in his own defense at trial.  In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court held that in order to establish that counsel's service was constitutionally deficient, a petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense.  See also Wiggins v. Smith, 539 U.S. 510 (2003).

12

In denying relief on this claim, the Superior Court applied <u>Strickland</u>'s standard,[3] and
determined that Petitioner had not demonstrated Attorney Walsh's performance fell below an
objective standard of reasonableness.  It held:  "Attorney Walsh did not interfere with [Petitioner's]
right to testify and…Attorney Walsh's advice was reasonable given the circumstances presented at
trial."  (Tab 30 at p. 9).  In so holding, it relied upon the following specific factual findings that
Judge Bozza made following the evidentiary hearing on this claim:

> (1) that "Mr. Walsh met with [Petitioner] on a number of occasions and discussed
> with [Petitioner] whether he should testify on more than five occasions";
>
> (2) "Mr. Walsh talked with [Petitioner] about the possible pitfalls of his testifying,
> apparently manifesting his concern about the plausibility of [Petitioner's] story";
>
> (3) "During those discussions, [Petitioner] related his version, which amounted to an
> 'alibi,' maintaining that his wife could support his position.  However, she was not
> able to testify and support [Petitioner's] alibi defense";
>
> (4) "Mr. Walsh believed that the prosecution's case was very strong";
>
> (5) "Mr. Walsh advised [Petitioner] that it was up to him to decide if he wanted to
> testify at trial";
>
> (6) "[Petitioner] was not pressured or coerced in any way to make his decision to
> forego testifying at his trial";
>
> (7) "Had [Petitioner] testified at trial, he would have told a version of events that
> would have indicated that he had nothing to do with the Ondreako killing" but "[he]
> had no other evidentiary support for his position"; and
>
> (8) "During the trial, Mr. Walsh requested that the Court conduct a colloquy to
> determine if the defendant wished to testify" and "[Petitioner] voluntarily chose not
> to testify after being provided with the opportunity to do so."

(<u>Id.</u> at pp. 3-7; <u>see</u> <u>also</u> Tab 27).

The above-cited factual and credibility determinations made by Judge Bozza are supported
by the record, including the testimony given at the PCRA evidentiary hearing (Tab 26), and
Petitioner has not demonstrated that those findings are "an unreasonable determination of the facts
in light of the evidence presented" at that hearing.  28 U.S.C. § 2254(d)(2).  And, as the Superior

---

[3]  Although Pennsylvania courts articulate a three-prong test for gauging ineffective assistance claims and
<u>Strickland</u> sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic
choice on the part of state courts.  <u>Rompilla v. Horn</u>, 355 F.3d 233, 248-49 (3d Cir. 2004) <u>rev'd on other grounds</u>,
<u>Rompilla v. Beard</u>, 545 U.S. 374 (2005); <u>see also</u> <u>Werts</u>, 228 F.3d at 202-03 (examining Pennsylvania ineffective
assistance law and determining that it is identical to the <u>Strickland</u> standard).

Court held, it is entirely within the responsibility of trial counsel to advise a criminal defendant not to testify where counsel believes such advice to be in the client's best interest.  It is not unreasonable to advise a client not to testify when, in the professional judgment of the attorney, and in light of the totality of the evidence, the client's testimony will be viewed as unbelievable by the jury.

Because the Superior Court's denial of this claim on the merits was neither contrary to nor an unreasonable application of Strickland, and since the factual findings of Judge Bozza were not based upon an unreasonable determination of the facts, Petitioner is not entitled to habeas relief on this claim.  28 U.S.C. § 2254(d)(1), (2).

## C.      Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Amended Section 2253 provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  Applying this standard here, jurists of reason would not find it debatable whether Petitioner has made a substantial showing of the denial of a constitutional right.  Accordingly, a certificate of appealability should be denied.

### III.    CONCLUSION

Wherefore, on the basis of the foregoing, it is respectfully recommended that the instant petition for writ of habeas corpus be denied and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.  See Nara v. Frank, — F.3d — , 2007 WL 1321929 (3d Cir. May 8, 2007).


                                        /s/ Susan Paradise Baxter
                                        SUSAN PARADISE BAXTER
                                        Chief U.S. Magistrate Judge


Dated: July 6, 2007